UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No.: 4:11-cv-02659 |
| | § | |
| $35,131.00 IN U.S. CURRENCY, | § | |
| | § | |
| Defendant in rem. | § | |

**CLAIMANTS' PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

After a bench trial, and having considered the pleadings of the parties, the evidence, and arguments of counsel, the Court makes the following findings of fact and enters the following conclusions of law:

I. **FINDINGS OF FACT**

1. Mr. Kyle Jones and Mrs. Berekti Abebe Jones (together, "Claimants") are residents of Breaux Bridge, Louisiana. **[Agreed]**

2. On June 2, 2011, Claimants and their infant daughter, Soliyana, were in George Bush Intercontinental Airport in Houston, Texas, preparing to travel to Addis Ababa, Ethiopia, for a two-month summer trip to visit Mrs. Jones' parents, siblings, and extended family. **[Agreed]**

3. Claimants spent months planning and saving for their trip and had made arrangements to rent a house and car in Ethiopia, and to have a party for their daughter's second birthday and a family celebration for Mr. and Mrs. Jones' wedding. Claimants also saved money to buy gifts for Mrs. Jones' family and to have sufficient funds for unforeseen

emergencies, like medical emergencies involving their daughter.  **[Neither Agreed nor Contested]**

4. Before leaving on the first leg of Claimants' trip to Addis Ababa, a flight from Houston to Dubai, a United States Customs and Border Protection (CBP) Officer asked Mr. Jones how much U.S. currency Mr. Jones and his wife were carrying.  Mr. Jones responded that he was unsure.  The CBP Officer then asked how many dollars were being carried and Mr. Jones stated that he would guess about $20,200.  The CBP officer then himself wrote that number down on a piece of paper, told Mr. Jones to sign it, and directed him to an inspection line.  **[Contested]**

5. Mrs. Jones was standing nearby minding Soliyana during the interaction between Mr. Jones and the CBP Officer, but the CBP Officer and Mrs. Jones did not address each other.  **[Contested]**

6. Prior to interacting with the CBP Officer, Mr. Jones was unaware of any requirement to report currency or monetary instruments, and after interacting with the CBP Officer, he was unclear about what was required.  Mrs. Jones was likewise unaware of any reporting requirement.  **[Neither Agreed nor Contested]**

7. During the short interaction between the CBP Officer and Mr. Jones, there was no discussion or explanation that "monetary instruments," as distinct from currency, had to be declared.  **[Contested]**

8. At the CBP inspection table, a different CBP officer talked to Mr. Jones and asked about various types of currency, mentioning traveler's checks in particular.  Mr. Jones stated that he had traveler's checks.  Mr. Jones voluntarily turned over the traveler's checks

($20,000, consisting of 200 traveler's checks of $100 each), and the cash that he was carrying ($11,131) at the inspection table.  **[Agreed]**

9.  Mrs. Jones was carrying $4,000 in her purse, which was also voluntarily turned over at the inspection table.  **[Agreed]**

10. Claimants were thereafter subjected to further pat-down searches and searches of their luggage; no additional currency or monetary instruments were found.  **[Agreed]**

11. On June 2, 2011, CBP seized $31,131 from Mr. Jones and $4,000 from Mrs. Jones. Claimants were then released from CBP custody without further incident.  **[Agreed]**

12. The seized funds were the proceeds of lawful activity, namely savings from Mr. and Mrs. Jones' employment.  The seized funds were not related to any illegal activities, and Claimants did not act with reckless disregard as to the source of the seized funds.

    **[Neither Agreed nor Contested]**

13. On June 2, 2011, Mrs. Jones did not transport and was not about to transport monetary instruments of more than $10,000 to or through a place outside the United States.  Thus, 31 U.S.C. § 5316 did not impose a reporting requirement on Mrs. Jones.  In all events, Mrs. Jones certainly did not know of an applicable reporting requirement under § 5316 or act for the purpose of evading a reporting requirement under § 5316.  **[Contested]**

14. On June 2, 2011, Mr. Jones, about to transport monetary instruments of more than $10,000 to or through a place outside the United States, filed a report in accordance with what Mr. Jones understood were the CBP Officer's instructions.  Mr. Jones told the CBP Officer that he was unsure of the amount of currency that he and Mrs. Jones were transporting, and he signed a FinCEN Form 105 indicating that he and his wife were

transporting $20,200 in U.S. currency.  In fact, Mr.  Jones was transporting $11,131 in U.S. currency, and Mrs. Jones was transporting $4,000 in U.S. currency.  **[Contested]**

15. At the time Mr. Jones signed the FinCEN Form 105, Mr. Jones did not know how much U.S. currency that he and his wife were actually transporting and was estimating the amount of currency they had.  Mr. Jones also did not know that traveler's checks were monetary instruments subject to inclusion in his report, and he understood the CBP officer to have instructed that the form covered dollars, meaning currency.  **[Contested]**

16. Mr. Jones made a mistake of fact as to the amount of U.S. currency and monetary instruments reported on the FinCEN Form 105.  Mr. Jones did not act with any purpose to evade the reporting requirements of § 5316.  **[Contested]**

## II.  CONCLUSIONS OF LAW

17. This Court has jurisdiction over this case.

18. Venue is proper in this Court.

19. This is a civil forfeiture action pursuant to 31 U.S.C. § 5317(c)(2).

20. The defendant in rem is alleged to have been involved in a violation of 31 U.S.C. §§ 5316(a)(1)(A), 5324(c)(1), and 5324(c)(2).

21. Section 5316(a)(1)(A) states:

> Except as provided in subsection (c) of this section [exception for common carriers], a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—from a place in the United States to or through a place outside the United States.

22. Section 5324(c)(1) states:

> No person shall, for the purpose of evading the reporting requirements of section 5316—fail to file a report required by section 5316, or cause or attempt to cause a person to fail to file such a report.

23. Section 5324(c)(2) states:

> No person shall, for the purpose of evading the reporting requirements of section 5316—file or cause or attempt to cause a person to file a report required under section 5316 that contains a material omission or misstatement of fact.

24. Violation of § 5316(a)(1)(A) requires a failure to file a required report.  Mrs. Jones was not required to file a report because she was not transporting more than $10,000 in monetary instruments.  Mr. Jones was transporting more than $10,000 in monetary instruments, but he understood that he had completed the required report.

25. Purposeful evasion of the reporting requirements of § 5316, *i.e.*, specific knowledge of and intent to evade the reporting requirements of § 5316, is a required element of both § 5324(c)(1) and § 5324(c)(2).  The Government bears the burden of proof on the element of purposeful evasion.  It has not carried that burden here.

26.  The government requests civil forfeiture under 31 U.S.C. § 5317(c)(2), which states:

> Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

27. The civil-forfeiture authority in § 5317(c)(2) affords this Court discretion to forfeit, all, some, or none of the property involved in the violation, stating that the property "**may** be seized and forfeited to the United States" (emphasis added).  This is in contrast to

criminal forfeiture under § 5317(c)(1), which directs that the court "shall order" forfeiture of all property involved; that mandate applies only in imposing sentence for a criminal violation, and the government has alleged no criminal offense here.

28. Moreover, any forfeiture ordered in this matter must not be unconstitutionally excessive under the Eighth Amendment of the United States Constitution.  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). *Bajakajian* held that a forfeiture is unconstitutionally excessive if it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 324.

29. 18 U.S.C. §983 was enacted as part of the Civil Asset Forfeiture Reform Act of 2000. Section 983(g) codifies *Bajakajian*: "The court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture," to determine whether the forfeiture is constitutionally excessive.

30. Among the factors that the Supreme Court considered were: (1) "the essence of the crime" of the respondent and its relation to other criminal activity, (2) whether the respondent fit into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the respondent's conduct. *Bajakajian*, 524 U.S. at 337-39.

31. As to the first factor, any violation of the reporting requirement was not knowing or willful, but rather was the result of a lack of knowledge of the disclosure requirements and confusion created by a CBP officer's instructions regarding those requirements.

32. As to the second factor, Claimants' transportation of funds did not involve money laundering, drug trafficking, tax evasion, or any other class of person for whom the forfeiture statute was principally designed. The seized funds were not intended for an

illicit purpose; they were intended for Claimant's lawful use in paying legitimate expenses during their trip.  Any violation of the reporting violation was solely a reporting offense.

33. As to the third factor, *Bajakajian* was a criminal case, in which the defendant was convicted of criminally violating the statutory reporting requirement.  The Supreme Court thus considered the maximum sentence or fine that could be imposed.  In contrast, the government does not even claim that Claimants in this case committed a criminal violation of the reporting requirement.  No criminal sentence or fine even applies to their conduct.

34. Moreover, even assuming that Mr. Jones "willfully" violated the reporting requirement of § 5316, and thus committed a criminal offense, *see* 31 U.S.C. § 5322, the fine or forfeiture under the Sentencing Guidelines would be between $500 and $5,000. *See* U.S.S.G. §2S1.3(a)(2); §2S1.3(b)(3); §5E1.2.  The offense level for a violation of § 5316 is 6, subject to a 6-level increase for the value of the currency here being greater than $30,000. *See* U.S.S.G. §2S1.3(a)(2); §2B1.1.  However, the total offense level would be reduced to 6 if four conditions are met: (1) Claimants did not know or believe that the funds were proceeds of unlawful activity; (2) Claimants did not act with reckless disregard as to the source of the funds; (3) the funds were the proceeds of lawful activity; and (4) the funds were to be used for a lawful purpose. *See* U.S.S.G. § 2S1.3(b)(3). For an offense level of 6, the fine that shall be imposed is between $500 and $5,000. *Id.* § 5E1.2.  The statutory maximum penalties for a criminal violation of § 5316 are a prison term of up to five years and a fine of up to $250,000.  *See* 31 U.S.C. § 5322.  But the penalties under the Sentencing Guidelines should be given greater weight because the

Guidelines take into account the specific culpability of the offender (and, again, Claimants are not even offenders).  *Bajakajian* at 339 n. 14; *cf. United States v. Beras*, 183 F.3d 22, 27 n.5 (1st Cir. 1999) ("*Bajakajian* . . . suggests that the maximum penalties provided under the Guidelines should be given greater weight than the statute because the Guidelines take into consideration the culpability of the individual defendant"); *United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1198 (9th Cir. 1999).

35. As to the fourth factor, any violation of the reporting obligation caused at most minimal harm, as there was no fraud on the government and no loss to the public fisc.  There is no articulable connection between the potential loss of information about the traveler's checks Mr. Jones was carrying on his trip and any government injury.

36. Under the facts of this case, no forfeiture is warranted.  The seized funds will be returned to Mr. and Mrs. Jones.

37. The Court reaches this conclusion in an exercise of its civil-forfeiture discretion under § 5317(c)(2).  Mr. Jones did not understand that traveler's checks were required to be reported on the FinCEN form, and the CBP Officer's conduct and actions led Mr. Jones to believe that he had to sign the form as completed by the officer.  Apart from those notice and fairness concerns, this Court also exercises its discretion under § 5317(c)(2) to avoid potential Excessive Fines Clauses infirmities with a forfeiture award.

38. [Alternatively, if forfeiture of some amount is warranted:]  Under the facts of this case, the Excessive Fines Clause warrants a forfeiture award from Mr. Jones of $500, the amount at the bottom end of the Guidelines range that would apply if Mr. Jones had committed an offense by willfully violating the reporting requirements.  Mr. Jones's reporting mistake was not criminal, was unrelated to any other illegal activity, and

involved funds that were to be used for legitimate expenses on a two-month overseas trip. Any higher forfeiture award would violate the Excessive Fines Clause.

39. Pursuant to the Civil Asset Forfeiture Reform Act, any claimant "who substantially prevails" in any civil proceeding to forfeit property shall be awarded "reasonable attorney fees and other litigation costs reasonably incurred by the claimant."   28 U.S.C. § 2465(b)(1)(A).

40. A claimant "substantially prevails" when there is a "judicially sanctioned change in the legal relationship of the parties."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *cf. United States v. $13,275.21, More or Less, in U.S. Currency*, 2007 WL 316455, at *3 (W.D. Tex. 2007) ("The Court concludes that *Buckhannon* is applicable to claims for attorney's fees and costs in civil forfeiture actions.").

41. If "the court enters judgment in part for the claimant and in part for the Government, the court shall reduce the award of costs and attorney fees accordingly."   28 U.S.C. §2465(b)(2)(D).

42. Accordingly, because the Court has entered judgment for Claimants for the return of all or part of the $35,131 seized from them, Claimants have substantially prevailed.

43. The Court shall reduce the award of costs and attorney fees proportionally to the amount of seized funds forfeited, if a portion of the seized funds are forfeited to the Government.

44. After entry of judgment, Claimants shall submit to the Court a motion for attorney fees, costs and pre-judgment and post-judgment interest in accordance with Fed. R. Civ. P. 54.

Dated: March 19, 2012

Respectfully submitted,

YETTER COLEMAN LLP

By: /s/ Bryce L. Callahan
  Bryce L. Callahan
  Texas State Bar No. 24055248
  Federal ID No. 680539
  909 Fannin, Suite 3600
  Houston, Texas  77010
  (713) 632-8000
  (713) 632-8002 (Fax)

ATTORNEYS FOR CLAIMANTS
KYLE D. JONES AND BEREKTI A. JONES

## CERTIFICATE OF SERVICE

  I hereby certify that on March 19, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/EMF system which will send notification of such filing to the following:

Albert Ratliff
Assistant U.S. Attorney
P.O. Box 61129
Houston, Texas 77208

    /s/ Bryce L. Callahan
    Bryce L. Callahan