UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| The United States of America,<br><br>        Plaintiff,<br><br>versus<br><br>$35,131.00 in United States Currency,<br><br>        Defendant. | Civil Action H-11-2659 |

## Opinion on Void Seizure

1.     *Introduction.*

At the airport, federal officers confiscated $35,131 from a family flying to Ethiopia. They said that the couple intentionally attempted to evade the reporting requirements for taking money outside of the United States. The citizens clearly had no intention to violate the rules, and the government must return their money and pay for their attorney's fees and costs of court.

2.     *Background.*

On June 2, 2011, Kyle Jones and his wife Berekti Jones were at George Bush Intercontinental Airport with their daughter Soliyana. They were flying to Ethiopia through Dubai and planned to stay in Addis Ababa for two-months while visiting family and celebrating Soliyana's second birthday.

The law requires that an international traveler declare on a form (a) that he has no more than $10,000 or (b) report the amount. When the couple reached the first check, officer Agustin Hernandez from the Customs and Border Protection of the Department of Homeland Security asked Kyle how much currency and monetary instruments he had on him. Kyle responded that he did not know. Hernandez then asked how many dollars he was carrying; Kyle replied that he would guess around $20,200. Hernandez wrote $20,200 on the form. He told Kyle to sign it, and Kyle did.

Hernandez then took the family to another table where officer Charlesworth Clarke told them to put all of their currency on it. At that point, Kyle asked what counted as currency because he had traveler's checks. From his six carry-on bags and jacket he retrieved everything – $20,000 in traveler's checks and $11,131 in cash. Berekti, who had been tending to their daughter during the conversations, handed the officer her wallet. It had $4,000 in cash. The officers then frisked the Joneses and searched their bags, and found no additional money – however described.

The officers seized the entire $31,131 that the Joneses had voluntarily given them and released them from custody. Having missed their flight, the Joneses spent $1,500 to replace the tickets plus having had to rent a hotel room.

3.  *Intent.*

Six officers appeared at the trial, four of whom testified. A "case agent" sat with the government's counsel. He knew nothing. His sole contribution had been to enter data into a computer; he could not have assisted the United States attorney. In addition to overreaching the people whom they are to serve, three officers wasted one-half day watching four others embarrass themselves.

The government presented no evidence – none – that the Joneses intended to evade the reporting requirements. Kyle told Hernandez that he did not know the amount of money he was carrying. Saying "I do not know" is not a deliberate failure to report. After Hernandez insisted on an answer, Kyle said that he would have to guess.[1] Guessing is not a material omission or a misstatement of fact – certainly not one the government can use to steal the money.[2]

The agency's official publications say that its officers can help travelers complete the form if they require assistance. Instead of ensuring that the Joneses understood the scope of "monetary instruments" and other reporting requirements, the officers took advantage of their guess. Hernandez instructed Kyle to complete the form before allowing him to count his money, and the others never let them correct it once their guess was shown to have been low.

---

[1] Reports on Exporting and Importing Monetary Instruments, 31 U.S.C. §§ 5316 (1986).

[2] *Id.* §§ 5317(c)(2), 5324(c).

These public servants sought to earn credit with their agency by collecting money. Some of it is returned to the agency – like justices of the peace whose pay is derived directly from the fines they impose. They focused on bureaucratic imperatives – not their duties to the public and law.[3]

The agencies that manage law officers create profiles of suspicious people. Ignoring for a moment that they include contradictions – like he rushed or he was very early, he looked the officer in the eye or he evaded looking him in the eye – the Joneses displayed no suspicious behavior. At every step they were candid if imprecise. They were traveling as a family, in normal dress, and remained polite and calm. They were taking money for a two month stay in Addis Ababa, Berekti's city of birth – a city that operates almost entirely in cash. It was reasonable that they would have cash and traveler's checks, and it was a precaution to split it among their bags and each other. Nothing was hidden.

Hernandez never should have asked Kyle to sign the form on a guess; rather, he should have had him count it at the second station and report the exact amount. Hernandez, with the connivance of his fellows, showed the only deceit. It appears that the officer's entire approach was to target the Joneses. They should have taken the family to the side and allowed them to count their money. They should have explained what constituted currency and given them adequate time to complete the form. Instead, they manipulated the Joneses' confusion into a deliberate failure to report. The officers accepted a guess from Kyle. When it was wrong, they took all of their money – for no harm and no deceit. They had no interest in ensuring that the couple adhered to the law. They wanted a statistic for their supervisor, and they cudgeled the Joneses to get one.

A lack of leadership at the agency allowed this. Its mission statement – which none of the officers could recall at the trial – is to serve the American public with vigilance, integrity, and professionalism. They displayed none of these. The agency says that integrity is its cornerstone; that its officers are guided by the highest ethical and moral principles. A gang of armed security officers bullied this family – a family who cooperated with the officers to their detriment. Our homeland will not be secure by these rascals. They played agency games, abused the people they are to serve, and violated their oaths to support the Constitution.

---

[3]Leonard W. Levy, A License to Steal: The Forfeiture of Property, University of North Carolina Press (1996).

4.  *Conclusion.*

In the initial conference, the United States demanded to seize the full amount even though, as the defense counsel mentioned, the recommended forfeiture for a conviction of criminal evasion would have been $500 to $5,000. The United States must pay the $35,131 to Kyle Jones and Berekti Jones and their attorney's fees and costs of court.

Signed on April 2, 2012, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge